In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4013

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*v.*

JASON R. HYATT, et al.,

*Defendants.*

APPEAL OF:

BCI AIRCRAFT LEASING, INC., et al.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-02224—**George W. Lindberg**, *Judge.*

ARGUED MAY 12, 2009—DECIDED SEPTEMBER 3, 2010

Before POSNER and SYKES, *Circuit Judges,* and VAN
BOKKELEN, *District Judge.*[*]

---

[*] The Honorable Joseph S. Van Bokkelen, United States
District Judge for the Northern District of Indiana, sitting by
designation.

SYKES, *Circuit Judge.* Brian Hollnagel and BCI Aircraft Leasing appeal the district court's order holding them in contempt and awarding attorney's fees for their failure to adequately respond to two subpoenas *duces tecum* served on them by the Securities and Exchange Commission ("SEC") in connection with litigation between the SEC and another party. The SEC initiated the contempt proceeding via a motion for a rule to show cause why Hollnagel and BCI should not be held in contempt. The motion asked the court to: (1) order them to fully comply with the subpoenas; and (2) order them to show cause why they should not be held in contempt for their past noncompliance. Accompanying this motion was a notice setting a date and time for a hearing at which the SEC said it would "present, and seek a hearing date regarding" its request for a show-cause order. Hollnagel and BCI interpreted the notice and motion to mean that the initial hearing would be entirely ministerial—that the court would issue a show-cause order and set *another* date on which the merits of the contempt issue would be heard. So they didn't show up.

When the case was called and Hollnagel and BCI didn't appear, the SEC skipped over the procedural preliminaries and moved right to the main event: The agency's lawyers asked the court to find Hollnagel and BCI in contempt. The court did so, ordered them to fully comply with the subpoenas within two days, and imposed a $1,000-a-day fine for any noncompliance after that date. The court later rescinded the fine, but

left the contempt order in place and ordered Hollnagel and BCI to pay the SEC's attorney's fees.

Hollnagel and BCI appealed, raising several procedural challenges to the district court's order. First, they contend that a contempt order cannot issue for noncompliance with a nonparty subpoena *duces tecum* unless the recipient of the subpoena is first ordered by the court to comply. In the alternative they claim that the SEC's motion for a rule to show cause notified them *only* that the SEC was seeking a show-cause order setting a future hearing date on the contempt motion, *not* that the court would immediately adjudicate whether they were in contempt. Accelerating the process, they maintain, deprived them of notice and an opportunity to be heard.

We reject the first of these arguments. Rule 45(e) of the Federal Rules of Civil Procedure specifically provides that a person who fails "without adequate excuse to obey [a] subpoena" may be held in contempt. The rule does not require the court to first order compliance before imposing the sanction of contempt, although subsection (c) of the rule requires an intervening court order if the recipient of the subpoena objects in writing to the production of documents or things. Hollnagel and BCI did not serve a written objection, so the SEC was entitled to seek a contempt sanction. We agree, however, with the alternative argument that the SEC's notice and motion for a rule to show cause did not provide sufficient notice that the district court would decide the contempt issue at the initial hearing. The notice sought only the issuance of a show-cause order and asked the

court to set a hearing at which the merits of the contempt issue would later be adjudicated. Accordingly, we vacate the contempt order.

## I. Background

In district-court litigation between the SEC and Hyatt Johnson Capital, lawyers for the SEC issued two subpoenas *duces tecum* to nonparties Brian Hollnagel and BCI Aircraft Leasing (collectively "BCI"). The subpoenas were issued in June and August 2008 and requested a large number of documents related to the underlying litigation. BCI received a two-week extension from the SEC for the June subpoena and responded in July by producing numerous documents on a CD. The SEC thought the production was deficient because some of the e-mails did not contain their original attachments or had attachments that were not produced in their native format. Twice the SEC requested that BCI cure the deficiencies; each time BCI attempted to do so, the SEC's lawyers found problems with the production. After receiving the August subpoena, BCI again asked the SEC for two extra weeks to respond. The SEC rejected this request on August 20, 2008—the due date set in the subpoena—based on the continuing dispute over the adequacy of BCI's compliance with the June subpoena.

On the afternoon of August 28, 2008—the Thursday before Labor Day—the SEC filed a motion in the district court seeking the issuance of a rule to show cause why BCI should not be held in contempt for noncompliance with the subpoenas. The notice accompanying

the motion told BCI that the SEC would appear in the district court at 9:30 a.m. on September 3, 2008 (the Wednesday after Labor Day), and would "then and there present, and seek a hearing date regarding" its motion for the issuance of a rule to show cause. The motion asked the court to: (1) order BCI to "fully and completely respond to the SEC's subpoenas"; and (2) order "BCI and Hollnagel to show cause why they should not be held in contempt of court." In a memorandum filed in support of the motion, the SEC requested the same relief. In the last paragraph of the memorandum, however, the SEC also asked the court to "find BCI and Hollnagel in contempt" and award attorney's fees.

BCI did not appear at the September 3 hearing. When the case was called and BCI's nonappearance was noted, the SEC's lawyers told the judge: "[W]e're here today on our contempt motion against BCI Aircraft Leasing and Hollnagel for not complying with three [sic] subpoenas issued to them." They asked the court to order that "BCI and Hollnagel make a complete and proper production" by noon on September 5. They also asked the court to "find BCI and Hollnagel in contempt for failing to respond to these subpoenas completely" and proposed a fine of $1,000 per day if complete production was not made by the September 5 deadline. Finally, they asked the court for an award of attorney's fees. The court orally entered these orders as requested. At the SEC's suggestion, the judge ordered the matter "continued" to September 10 to "report back on where we are."

Later that same day, the court issued two conflicting written orders purporting to record what transpired

during the morning hearing. The first, a summary minute order, stated: "Hearing held and continued to 9/10/2008 at 9:00 a.m. Response due 9/5/2008 by noon to plaintiff's motion for order to show cause against BCI . . . ." BCI says that it understood this as an order directing it to submit a "show cause" response on the contempt issue by the September 5 deadline and setting a hearing on the matter at 9 a.m. on September 10. The second order, prepared by the SEC and issued after the minute order, was quite different. It made findings adjudicating BCI in contempt and ordered "full, proper, and complete" compliance with the subpoenas by noon on September 5. The order also imposed a fine of $1,000 for every day of noncompliance thereafter, "including weekends and holidays." Finally, this second order awarded the SEC its "costs and reasonable attorney fees" and directed the agency to file an appropriate fee petition.

The next day, September 4, the district court entered a docket entry striking the first of the written orders entered on September 3. BCI immediately moved to vacate the September 3 order finding it in contempt. BCI argued first that the contempt motion was not properly before the court on September 3. Based on the contents of the notice accompanying the SEC's August 28 motion, BCI argued that the September 3 hearing was essentially only a scheduling hearing. BCI also attempted to explain why it was not in contempt. On September 5, in accordance with the terms of the by-now stricken minute order, BCI filed a response to the SEC's motion for a rule to show cause. The court struck this response as

moot. Also on September 5, BCI sent another production of subpoenaed documents to the SEC. The SEC considered this latest attempt at compliance deficient. During the course of the next week, BCI sent two additional productions attempting to address the asserted deficiencies.

On September 9, the district court denied BCI's motion to vacate the contempt order. The September 10 hearing was continued to September 17, and on that date the judge addressed whether BCI had complied with the subpoenas as ordered. Concluding that BCI was making a reasonable effort to comply, the judge continued the hearing to October 1. BCI made yet another production of documents several days later. Finally, at the October 1 hearing, the judge found that BCI had substantially complied with the September 3 order to compel production and therefore rescinded the $1,000-per-day fine. The court left the rest of the contempt order in place, however, and required BCI to pay the SEC's attorney's fees. The SEC submitted a bill for more than $33,000 in fees, which the district court reduced to just under $6,000. BCI appealed.

## II. Discussion

Civil contempt is "a unique civil sanction because its aim is both coercive and compensatory." *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008). The coercive aspect of the remedy is not at issue here. To prevail on a request for a contempt finding,

the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *Id.*

BCI argues that a subpoena *duces tecum* issued by an attorney is not a court order and therefore the district court could not hold BCI in contempt simply for failing to comply with the SEC's subpoenas. The first element of contempt requires the moving party to "'point to a decree from the court which set[s] forth in specific detail an unequivocal command which the party in contempt violated.'" *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986)). BCI contends that this prerequisite was not met here because the subpoenas issued by the SEC's attorneys were not court orders. BCI claims that before adjudicating the contempt motion, the district court first had to issue an order compelling compliance with the SEC's subpoenas.

This argument runs into difficulty under certain provisions in the procedural rules applicable to discovery subpoenas. Rule 45(a) of the Federal Rules of Civil Procedure explains that a civil subpoena may issue in one of two ways. The clerk of the court may issue a subpoena "signed but otherwise in blank," which is then completed by the requesting party. FED. R. CIV. P. 45(a)(3). Alternatively, an attorney may also "issue and sign a subpoena

as an officer of . . . a court in which the attorney is authorized to practice; or . . . a court for a district where a deposition is to be taken or production to be made, if the attorney is authorized to practice in the court where the action is pending." *Id.*

Rule 45(e) speaks directly to the power of the district court to hold the recipient of a subpoena in contempt: "The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." FED. R. CIV. P. 45(e). The contempt provision in subsection (e) does not distinguish between subpoenas issued with some court involvement—those issued in blank by the court clerk and completed by the party who requests it—and those issued without any court involvement at all by an attorney as an officer of the court. Instead, subsection (e) of Rule 45 broadly refers to the contempt power of the "issuing court," which implies that all discovery subpoenas are contempt-sanctionable orders of the court whether issued in blank by the clerk or by an attorney as an officer of the court.

The Advisory Committee Notes confirm this reading of the rule. The commentary explains that "[a]lthough the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions." FED. R. CIV. P. 45(a)(2) advisory committee's note (1991 amend.). Nothing in Rule 45 or the accompanying commentary purports to limit the contempt power to subpoenas issued with more direct district court involvement or to require

an intervening court order when the subpoena is issued by an attorney.

There is limited appellate caselaw on this issue, but that which exists supports this understanding. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("a subpoena duces tecum is itself a court order, and noncompliance may warrant contempt sanctions," but noting that when the person subpoenaed objects in writing, "the party seeking discovery must obtain a court order directing compliance" before contempt will be available); *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341-42 (8th Cir. 1975) (explaining the distinction between Rule 37 sanctions for failure of a party to comply with a discovery request and Rule 45 sanctions for failure of a nonparty to comply with a discovery subpoena). Accordingly, we reject BCI's argument that a subpoena issued under Rule 45(a)(3) by an attorney as an officer of the court is not itself a court order subject to contempt sanctions if disobeyed.

It does not follow, however, that a contempt motion for disobedience of a nonparty subpoena should be treated in exactly the same way as a contempt motion for violation of another kind of court order. As the commentary to Rule 45(e) explains:

> In at least some circumstances, a non-party might be guilty of contempt for refusing to obey a subpoena even though the subpoena manifestly overreaches the appropriate limits of the subpoena power. But, because the command of the subpoena is not in

fact one uttered by a judicial officer, contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney.

FED. R. CIV. P. 45(e) advisory committee's note (1991 amend.) (citation omitted). Rule 45 also contains important provisions to protect the recipient of a subpoena from undue burden or expense, invasion of a privilege, or disclosure of protected material. *See* FED. R. CIV. P. 45(c). For example, under Rule 45(c), intervening court involvement is required prior to initiation of contempt proceedings if the recipient of the subpoena serves a written objection on the party or attorney designated in the subpoena. FED. R. CIV. P. 45(c)(2)(B). On receipt of such an objection, the party serving the subpoena "may move the issuing court for an order compelling production or inspection," and the production or inspection "may be required only as directed in the order." FED. R. CIV. P. 45(c)(2)(B)(i)(ii). Also, Rule 45(c)(3) describes the circumstances under which the court must or may quash or modify a subpoena. *See* FED. R. CIV. P. 45(c)(3). These provisions suggest at a minimum that contempt motions for noncompliance with a discovery subpoena should be entertained with special attention to the procedural and substantive rights of the nonparty witness.

Here, BCI did not serve a written objection or move to quash or modify the subpoenas. The SEC therefore was not *required* to first obtain a court order compelling compliance with its subpoenas before initiating contempt proceedings. As a general matter, however, the

more prudent practice for the court is to issue such an order before entertaining a motion for contempt. *See* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2465 (3d ed. 2008) ("The district judge normally will preface a contempt citation with an order directing either compliance with the subpoena or a showing of an excuse for the noncompliance."). The problem here is not that the SEC could not move for contempt without an intervening court order compelling compliance; the problem is that the notice and motion did not provide adequate notice that the SEC would ask for a finding of contempt at the initial hearing on the motion for a rule to show cause.

Due process requires that a person facing contempt sanctions be given adequate notice and fair opportunity to be heard in civil contempt proceedings. *See, e.g.*, *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 746-47 (7th Cir. 2007). This minimally includes a requirement that "notice be given of the time and place of hearing" on the propriety of a contempt order. *Am. Fletcher Mortg. Co. v. Bass*, 688 F.2d 513, 519 (7th Cir. 1982); 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2465 (3d ed. 2008) ("[D]ue process does require that any civil contemnor be given certain basic procedural protections before being subject to any sanction: adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). In this context, "the focus must be on notifying the alleged contemnor, rather than on the

formalities of notification procedures." *Autotech Techs.*, 499 F.3d at 748.

It is undisputed that BCI was on notice that the SEC was charging it with contumacious noncompliance with the subpoenas; that much was clear from the SEC's motion. BCI argues more particularly that it did not have sufficient notice that the district court would be asked to decide whether a contempt order should be issued *at the September 3 hearing*. Based on the specific contents of the notice and motion, we agree. No doubt it was unwise for BCI to consider its presence at the September 3 hearing to be optional. But the SEC's use of the procedural device of a "motion for a rule to show cause" gave BCI notice *only* that the court would be asked to issue a show-cause order on that date, *not* that it would immediately take up the merits of the contempt issue. The motion for a rule to show cause was an unnecessary extra layer of process, but its use here effectively postponed the adjudication of the alleged contempt until after the court issued the requested show-cause order.

Show-cause motions historically served two purposes: First, the motion was a way to bring matters to the district court more speedily than other methods of presentment prior to the Federal Rules of Civil Procedure. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1195 (3d ed. 2004). Second, the granting of a show-cause motion provided notice to the nonmoving party of what he must do to avoid some other court action, such as the issuance of an

injunction or writ. *Id.* A show-cause motion essentially asks a district court to issue an order requiring the nonmovant to show the court by a certain date why the court should not take some other action—here, the imposition of a contempt sanction. In other words, the show-cause order satisfies the due-process notice requirement by giving the nonmoving party notice of his opportunity to respond before the substantive request for relief is entertained. *See Mercer v. Mitchell*, 908 F.2d 763, 766-68 (11th Cir. 1990).

The Federal Rules of Civil Procedure declined to incorporate this burdensome procedure into the modern procedural code. Instead, a Rule 6(c) notice of hearing and a Rule 7(b) motion stating the grounds for the relief and specifying the actual relief sought suffice to provide due-process notice to the nonmoving party prior to entry of a court order. FED. R. CIV. P. 7(b). Under Rule 6(c)(1)(C), the district court may, ex parte and for cause, shorten the normal notice period. Judge Clark—one of the principal drafters of the Federal Rules of Civil Procedure—long ago explained the procedural shift away from show-cause orders:

> An unnecessary appearance of irregularity was given the proceedings below by the fact that formal orders to show cause, signed by a judge, were procured, whereas simple notices of motions would have been preferable. The new Federal Rules of Civil Procedure attempt to limit to a minimum these unnecessary formalities which take up the time of judges and add nothing of value to the proceedings.

Here the order to show cause on the motion to quash was simply a somewhat peremptory notice of motion, as the judge below pointed out. Since such orders to show cause serve only to confuse, judges might well decline to sign them except when really required by or justified under binding rules of procedure.

*Application of Tracy*, 106 F.2d 96, 98 (2d Cir. 1939) (Clark, J., concurring). Accordingly, the Federal Rules of Civil Procedure have simplified motion practice and largely eliminated the need to seek show-cause orders. Civil contempt proceedings may be initiated by notice and motion.

Despite its obsolescence, litigants regularly ask courts to issue show-cause orders in civil contempt proceedings, perhaps because the federal rules for *criminal* contempt provide that a court must give notice of contempt proceedings "in open court, *in an order to show cause,* or in an arrest order." *See* FED. R. CRIM. P. 42(a)(1) (emphasis added). Regardless of the motivation, when a party initiates a civil contempt proceeding via a motion for a rule to show cause, we see no reason why it should not be given its historical and literal meaning for notice purposes: that the moving party is asking *only* for a preliminary order directing the alleged contemnor to show cause why the court should not find him in contempt. District courts in this circuit apparently regularly treat show-cause motions as distinct from other motions under the Federal Rules of Civil Procedure. *See, e.g., Sommerfield v. City of Chicago,* 252 F.R.D.

407, 413 (N.D. Ill. 2008) ("The purpose of [a show-cause] motion is to persuade the court that there should be a hearing at which the factfinder will ultimately evaluate whether a finding of contempt is appropriate on the evidence presented.").[1]

In certain limited circumstances, a district court may treat a show-cause motion as a motion for an order on the merits of the alleged contempt where doing so would not cause prejudice—that is, when it would not violate the alleged contemnor's right to notice and an opportunity to be heard. *See* 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1195 (3d ed. 2004) ("[A] request for a show cause order usually will be entertained and treated as a motion, *if doing so will not prejudice*

---

[1] *See also Commodity Futures Trading Comm'n v. Velazquez*, No. 04 C 5853, 2007 WL 1673218, at *2 (N.D. Ill. June 6, 2007) ("[T]he Motion to Issue a Rule to Show Cause why Mr. Velazquez should not be held in civil contempt . . . does not appear to be a dispositive motion. The idea of a show cause motion is to hold a hearing, at which the factfinder will ultimately evaluate whether a finding of contempt . . . is appropriate on the evidence and facts presented."); *Bds. of Trs. of the Bricklayers Local 74 v. Vorkapic*, No. 01 C 1048, 2001 WL 649501, at *1 n.1 (N.D. Ill. June 8, 2001) ("We impliedly granted the plaintiffs' [show-cause] motion prior to conducting the evidentiary hearing, which all parties understood to be a hearing on whether or not the defendants were in violation of the preliminary injunction."); *Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1993 U.S. Dist. LEXIS 12427 (N.D. Ill. Sept. 7, 1993).

*the opposing parties.*" (emphasis added)); *Sommerfield*, 252 F.R.D. at 414 ("[T]he motion may properly be viewed as a motion for contempt since it asked for a finding of contempt and a miscellany of significant sanctions, the City has responded, and the matter has been fully briefed by both sides. Thus, it is as though the rule to show cause had been granted.").[2]

The SEC argues that BCI should have been aware that the September 3 hearing on the show-cause motion was BCI's only opportunity to argue the merits of the alleged

---

[2] *See also Am. Family Mut. Ins. v. Roth*, No. 05 C 3839, 2007 WL 2377335, at *14 (N.D. Ill. Aug. 16, 2007) (treating show-cause motion as a motion on the merits of contempt because "defendants have had ample notice of the claims against them and have fully responded to [movant]'s theories, arguments, and supporting evidence. Hence, there is no necessity for directing [a show-cause order] . . . ."); *Vorkapic*, 2001 WL 649501, at *1 n.1 ("Although the parties' subsequent briefs continue to be styled as briefs in support or opposition to the Motion for Issuance of an Order for Rule to Show Cause, they both argue the ultimate question before the court—that is, whether the defendants are indeed in contempt, not whether this court should issue an order for rule to show cause."); *Orion Indus., Inc. v. Antenna Co.*, No. 87 C 6788, 1991 WL 70862, at *4 (N.D. Ill. Apr. 27, 1991) ("[E]ven a cursory review of the briefs filed and the court transcripts in this case, reveals that from the moment the motion for a rule to show cause was first presented to Magistrate Judge Lefkow, the parties argued the motion on the merits, and treated the motion like it was a motion for an order finding the defendants in contempt of court.").

contempt. The SEC notes that it had previously filed a similar motion in a different case before a different judge in which BCI was then a named defendant, and BCI responded to this motion by specifically addressing the propriety of a contempt order. We are not persuaded. BCI's prior conduct in a *different* case before a *different* judge in a case in which it was a party does not determine the adequacy of the notice provided in *this* case. The notice at issue here told BCI that the relief sought at the September 3 hearing would be limited to the issuance of two orders: (1) an order compelling BCI's compliance with the subpoenas; and (2) an order requiring BCI to show why it should not be held in contempt.

The SEC also relies on a paragraph at the end of its memorandum in support of its motion for a rule to show cause in which it asked the court to find BCI in contempt and award attorney's fees. These requests for substantive relief, however, were contained only in the supporting memorandum—not in the notice and motion—and appeared only once and then only in the final sentences of the memorandum. The bulk of the memorandum discussed the grounds for the SEC's request for an order compelling compliance with the sub-poenas and its request for an order to show cause. The memorandum was not enough to counteract the effect of the SEC's notice and motion, which put BCI on notice that the SEC would seek only procedural relief at the September 3 hearing.

Finally, the SEC contends that any failure of notice did not prejudice BCI because BCI has never said how actual

notice would have helped it avoid a contempt finding. The record does not support this argument. BCI filed a motion to vacate the contempt order on September 4 and argued that it had been making reasonable efforts to comply with the subpoenas and therefore was not in contempt. But the district judge denied the motion as moot because he thought BCI had waived its opportunity to contest the contempt finding by failing to show up at the September 3 hearing. As we have explained, although it was imprudent not to attend that hearing, the SEC's notice and motion failed to give BCI notice that the agency would seek a contempt ruling at that time. As such, there was no waiver on the merits of the contempt issue. The district court never considered BCI's claim that it had been making a good-faith effort to comply with the subpoenas. Had it done so, it might not have found BCI in contempt. *See* FED. R. CIV. P. 45(e) ("The issuing court may hold in contempt a person who, having been served, fails *without adequate excuse* to obey the subpoena." (emphasis added)). Treating the SEC's procedural motion for rule to show cause as a substantive motion for contempt prejudiced BCI.

CONTEMPT ORDER VACATED