SPRINT SOLUTIONS, INC. and Sprint Communications Company, L.P., Plaintiffs

v.

ICELL GURU, INC., and Daniel Yusupov, et al., Defendants.

Case No. 15 C 7455

United States District Court, N.D. Illinois, Eastern Division.

Signed October 20, 2015

Lawrence Harris Heftman, Schiff Hardin LLP, Chicago, IL, for Plaintiffs.

## ORDER

Daniel G. Martin, Magistrate Judge

Plaintiffs' Motion to Compel [1] is granted in all respects except that Plaintiffs' request to hold Encore Repair Services, LLC in contempt is denied without prejudice. Plaintiffs may re-take a Rule 30(b)(6) deposition of Encore Repair Services, LLC by 11/10/2015. The Court recommends that Encore Repair Services, LLC be required to pay Plaintiffs' reasonable fees incurred in connection with their motion to compel. By 11/3/2015, Plaintiffs shall submit itemized documentation of

their litigation expenses associated with bringing their motion to compel along with argument as to why the expenses are reasonable. Encore Repair Services, LLC may object to the fee petition by 11/10/2015.

## STATEMENT

Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company, L.P. (collectively, "Sprint") move to compel Encore Repair Services, LLC ("Encore") to testify at a deposition pursuant to a subpoena issued from the United States District Court for the Eastern District of New York. In that action, Sprint alleges that Defendants iCell Guru, Inc. ("iCell Guru") and Daniel Yusupov are engaging in unlawful business practices involving the unauthorized and deceptive bulk purchase and resale of Sprint's wireless telephones, the theft of Sprint's subsidy investment in the phones, the unlawful access of Sprint's protected computer systems and wireless network, the trafficking of Sprint's protected and confidential computer passwords, and the willful infringement of Sprint's trademarks. Encore is not a party to the New York lawsuit. Sprint states that during the course of the litigation, it uncovered evidence showing that Encore transacted business with the Defendants and Encore has relevant information regarding Defendants' trafficking of Sprint phones. Encore explains that at one point in time over a period of a few months, Encore purchased a few hundred used cell phones from iCell Guru, which Encore then shipped as warranty-replacement phones to end-users of Encore's customer, SquareTrade.

On May 28, 2015, Sprint issued a Subpoena to Testify at a Deposition in a Civil Action (the "Subpoena") to Encore. (Doc. 1–2). The Subpoena contained a list of 26 Subject Areas. Id. at 6–8. Sprint states that the Subpoena seeks Encore's testimony on topics pertaining to the business dealings between Defendants and Encore. According to Sprint, testimony on these topics will show whether, and to what extent, Defendants sold Sprint Phones to Encore or bought Sprint Phones from Encore in furtherance of their scheme. Sprint also states that the information sought in the Subpoena will assist in identifying Defendants' co-conspirators.

▮ Encore did not file a motion for protective order or to quash or modify the Subpoena.[1] The Encore deposition was set for June 26, 2015. Sprint then agreed to postpone the deposition in order to allow Encore to answer questions by way of an informal interview. (Doc.1–1 at ¶ 4). On June 11, 2015, Sprint's counsel interviewed Tony Graffia, Encore's Chief Executive Officer. Id. at ¶ 5. Sprint states that "Mr. Graffia was not adequately prepared and did not have the information needed or identified in the subpoena." Id. Encore states that during the interview, Sprint asked several questions that went beyond the scope of Encore's relationship with iCell Guru and Encore's counsel objected and directed Mr. Graffia not to answer such questions.

On June 23, 2015, Sprint's counsel sent an email to Encore's counsel listing eight "subject areas that [Sprint] still need[ed] information on." (Doc. 1–13). Sprint's counsel stated: "Please note, this is not an exhaustive list and there may be additional topics that arise based on our continued conversation." Id. Sprint's counsel stated that she was willing to schedule an interview and postpone the deposition set for June 26, 2015 "in the hopes that we can work this out informally." Id. She further stated that "[i]n the event that we are not able to obtain the information we need, we will need to go forward with the deposition and would like to get a date on the calendar in an abundance of caution." Id. On July 9, 2015, Encore responded by email regarding the eight listed

---

1. Encore's counsel states that he had a telephone conversation with Sprint's counsel on June 2, 2015, the day after Encore received the subpoena, and advised Sprint's counsel that Encore objected to questions about areas other than Encore's relationship with iCell Guru or questions about Encore's other interactions involving Sprint or Sprint phones. (Doc. 15 at 12, ¶ 5). The proper procedure for objecting to the scope of the subject areas identified in the Subpoena was to file a motion for protective order under Rule 26(c) or a motion to quash or modify the subpoena under Rule 45(d)(3). Encore did not file a protective order motion or motion asserting that compliance would impose an undue burden. Without an appropriate motion, the Court has no basis on which to consider an objection to the scope of the Subpoena.

topics. (Doc. 15 at 15). Sprint says that Encore did not provide another witness in a timely manner. (Doc. 1–1 at ¶ 5). With discovery closing in Sprint's case against Defendants, Sprint's counsel sent an email dated July 10, 2015 to Encore's counsel stating, "[t]he list is [eight] topics that we want to ask questions about. Since we are winding down and running out of time, I think it's best to set the deposition." (Doc. 15 at 14). On July 13, 2015, Encore's counsel responded stating that "[o]ur witness for these topics would be Angela Belanger." *Id.* Sprint and Encore eventually agreed to a deposition on July 22, 2015 for Ms. Belanger.

On July 14, 2015, Sprint served Encore with an Amended Subpoena to Testify at a Deposition in a Civil Action ("Amended Subpoena"). (Doc. 1–3). The Amended Subpoena contained the same 26 Subject Areas as the original Subpoena and a deposition date of July 22, 2015. *Id.* at 6–8. Encore did not move to quash or modify the Amended Subpoena or seek a protective order regarding the scope of the Amended Subpoena. (Doc. 1–1 at ¶ 6). Six days later, Sprint's counsel requested that the deposition be moved to the following day, to which Encore agreed. On July 20, 2015, Sprint sent a Second Amended Subpoena to Testify at a Deposition in a Civil Action ("Second Amended Subpoena") with the same 26 Subject Areas as the previous subpoenas and deposition date of July 23, 2015. (Doc. 1–4 at ¶ 6–8). Encore did not move to quash or modify the Amended Subpoena or seek a protective order regarding the scope of the Amended Subpoena. (Doc. 1–1 at ¶ 7).

On July 23, 2015, Sprint's counsel took the deposition of Encore's corporate designee, Angela Belanger. Sprint's counsel states that "[d]uring the deposition it was clear that the witness was not prepared and neither the witness nor Encore's attorney read the subject areas identified in the Subpoena." (Doc. 1–1 at ¶ 8). Both Ms. Belanger and Encore's counsel confirmed that they did not look at the Subject Areas contained in the Second Amended Subpoena prior to Encore's deposition. (Doc 1–5 at 16:16–18; 186:6–10). At the deposition, Encore's counsel objected to testimony on the 26 Subject Areas on the

ground that the parties had "modified the subject areas by email communications with respect to the person you want to talk to and the subject areas you are interested in and we produced the person based on the email that you sent me with the categories of subjects that you were interested." (Doc. 1–5 at 17:6–12). Encore's counsel acknowledged that Sprint's counsel's email dated June 23, 2015 stated there may be additional topics beyond the eight listed, but pointed out that Sprint never provided a list of additional topics. *(Id.* at 186:2–5).

On August 5, 2015, Sprint sent Encore a letter demanding that Encore produce a prepared corporate designee on all 26 Subject Areas listed in the subpoenas. (Doc. 1–11). Encore responded that it was only required to provide a knowledgeable witness regarding the eight topics identified in Sprint's counsel's June 23rd email. (Doc. 1–12). Counsel met and conferred by telephone but were unable to resolve their differences regarding the scope of Encore's deposition. Sprint now moves to compel Encore to produce a prepared corporate designee for a full seven hour deposition to testify regarding each and every subject area listed in the Second Amended Subpoena. *See* Fed. R. Civ. P 45(d)(2)(B)(i) (stating "the serving party may move the court for the district where compliance is required for an order compelling production or inspection.").

### DISCUSSION

Federal Rule of Civil Procedure 30(b)(6) governs deposition notices directed to an organization. It provides that a deposition notice to an organization "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The named organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* The organization must prepare its designated individuals to "testify about information known or reasonably available to the organization." *Id.*

Sprint argues that for all practical and legal purposes, Encore failed to appear for

its Rule 30(b)(6) deposition. Sprint states that it never agreed to limit the deposition to the topics in the June 23rd email. Sprint relies on the language in the email which states that the list of eight topics was "non-exhaustive." Sprint says that the eight topics listed in the June 23 email applied only to the contemplated follow-up interview, which never occurred. According to Sprint, the Amended Subpoena "supersedes the non-exhaustive list of topics identified in the June 23 email." (Doc. 1 at 5). Finally, Sprint states that even if the June 23rd email was the agreed upon scope of the deposition, Ms. Belanger was unable to answer many questions regarding many of the topics identified in the June 23rd email. In response to Sprint's motion, Encore argues that the parties agreed to limit the scope of the Rule 30(b)(6) deposition to the eight subject areas identified by Sprint's counsel in a June 23, 2015 email and that Encore's representative testified sufficiently regarding those eight areas.

Given the record before the Court, the Court finds Encore's counsel's explanation for failing to have prepared Ms. Belanger to testify beyond the eight topics listed in the June 23 email to be reasonable. The Court presumes the June 23 email resulted in a misunderstanding as to the scope of the 30(b)(6) deposition. After the June 23 email and before Ms. Belanger's deposition, Sprint never expressly advised Encore that it was expanding the scope of the deposition to include all 26 topics listed in the Second Amended Subpoena. Encore fairly viewed the Amended Subpoena and Second Amended Subpoena as merely confirming the date of deposition and not as expanding the scope of the deposition beyond the eight topics. In hindsight, the better practice would have been for Sprint's counsel to explicitly inform Encore before the deposition that the eight topics listed in the June 23 email applied only to a potential follow-up interview and that the deposition would cover all 26 Subject Areas listed in the Amended Subpoena and Second Amended Subpoena.

However, giving Encore the benefit of the doubt that it initially misunderstood the scope of the 30(b)(6) deposition, Encore does not adequately explain why after its deposition, it did not prepare and produce a witness knowledgeable about all 26 Subject Areas identified in the subpoenas. Encore acknowledges that Sprint's counsel's June 23 email stated that the eight listed topics was "not an exhaustive list and there may be additional topics based on our continued conversation." (Doc. 1–13). Encore was put on notice throughout Ms. Belanger's deposition that Sprint intended to pursue testimony regarding the 26 Subject Areas listed in the subpoenas. After the deposition, Sprint's counsel sent a letter to Encore's counsel demanding that Encore produce a corporate designee prepared to testify regarding all 26 Subject Areas listed in the subpoenas. In light of Sprint's letter August 5, 2015, Encore should have had no misunderstanding regarding the scope of the 30(b)(6) deposition. Despite this notice that Sprint was not agreeing to limit the 30(b)(6) deposition testimony as Encore had believed, Encore refused to "voluntarily produce another witness" (doc. 1–12 at 3). Encore's August 14, 2015 letter effectively prevent the parties from resolving this issue without Court intervention even though there was no longer a misunderstanding regarding the scope of testimony sought by Sprint. Sprint is entitled to depose an Encore representative knowledgeable about the 26 subjects listed in the subpoena rider.

Sprint further argues that Encore's testimony on the eight areas it agrees were at issue was insufficient. Encore responds that Ms. Belanger was fully prepared and was able to properly testify for four hours on the eight agreed-upon topics. Encore claims that Ms. Belanger was unable to answer certain questions because they were "poorly phrased," "improperly framed" or "lack proper foundation." (Doc. 15 at 9) Encore's arguments are unconvincing. Encore first claims that Sprint expected Ms. Belanger to provide unreasonably detailed testimony pertaining to: (1) the condition and packaging of the more than 200 cell phones that Encore purchased from Defendant iCell Guru; (2) SquareTrade customers to whom Encore provided insurance replacement phones; and (3) payments made by Encore to Defendant iCell Guru. Encore asserts that the information Sprint sought on these subjects was "not

reasonably available to a corporate representative" due to the amount of detail involved.

■ A corporate representative "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Sprint says that the information it sought with respect to the above three subjects was known or reasonably available to Encore because it was known by other Encore employees. Ms. Belanger confirmed that other Encore employees or groups of employees may have responsive information for each of the three subjects. As to the condition and packaging of phones, Ms. Belanger testified that "[t]he warehouse team in the back" would have responsive information. Doc. 1–5 at 58:19–22, 60:11–15. Ms. Belanger also testified that Encore employees Bob Law and Larry Kerr had information about SquareTrade customers who received insurance replacement phones from Encore. Id. at 52:11–22, 127:23–24, 128:1–8, 150:23–24, 151:1–2. Finally, Ms. Belanger was unable to verify whether Encore produced a complete list of the payments it made to iCell Guru, testifying: "I don't know. I'm not in accounting." Id. at 130:4–22. This testimony confirms that information pertaining to (1) the condition and packing of the phones; (2) SquareTrade customers; and (3) payments made to iCell Guru may be known or reasonably available to Encore. In light of Ms. Belanger's testimony, Encore is obligated to follow-up with these employees or groups of employees and provide one or more witnesses to provide responsive testimony on these subjects.

■ Encore objects that Sprint did not ask "foundational questions" about whether Encore has information responsive to certain questions that Ms. Belanger did not answer. (Doc. 15 at 45). Encore has not cited any cases establishing that Sprint was required to establish a foundation for Encore's Rule 30(b)(6) testimony. Rule 30(b)(6) requires a person designated by Encore to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The rule requires Encore to make a good faith effort to find out the relevant facts and prepare a representative to testify about the subjects. If information is not

"known or reasonably available" to Encore as to certain questions or topics, its representative(s) should testify to that effect. In any event, as to the three subjects listed above, Sprint has established that other Encore employees may have information responsive to Sprint's questions. Encore's lack of foundation objection is overruled.

The Court also rejects Encore's claim that Ms. Belanger was "fully prepared" to testify on the eight topics listed in the June 23 email. The first topic was "[a]ll transactions and communications of any kind between Encore and any of the Defendants." However, Ms. Belanger could not testify about whether Defendant iCell Guru sold Encore brand new phones and in their original packaging (doc. 1–5 at 58:19–22, 60:11–24) or about Encore's procedure for inspecting the phones when received from Defendant iCell Guru (id. at 61:1–9). The second topic was "[a]ll transactions and communications of any kind between Encore and any party relating to a product that originated with any of the Defendants." Ms. Belanger could not testify about: Encore's procedure for inspecting phones before being shipped (id. at 150:2–14); the packaging Encore used to ship phones to SquareTrade customers (id. at 84:4–17; 85:6–8, 203:16–19); complaints made by SquareTrade customers who received phones from Encore (id. at 150:23–24, 151:1–2) or Encore's contract to provide insurance replacement phones to Square-Trade's customers (id. at 145:18–24, 146:1–18). Finally, Ms Belanger was unable to answer certain questions relating to the six remaining topics: whether Encore sold phones to iCell Guru (id. at 156:1–4) (Topic No. 3); Encore's method for checking electronic serial numbers (ESNs) to ensure that the phones have not been reported lost or stolen (id. at 95:16–24, 96:1–7) (Topic No. 4); the names of all Encore employees who were in contact with the Defendants (id. at 21:3–6) (Topic No. 5); the bank accounts Encore used to pay Defendant iCell Guru (id. at 111:18–21) (Topic No. 6); whether Encore produced records of all phones it purchased from Defendants (id. at 117:3–13, 130:4–22) (Topic Nos. 7 & 8); and Encore's efforts to locate and produce documents in response to

Sprint's subpoena (*id.* at 20:13–15, 22:22–24, 23:13–15, 114:15–20, 199:15–17) (Topic No. 7). Given Ms. Belanger's inability to answer the above questions, Encore is required to present a fully prepared Rule 30(b)(6) representative on these topics for deposition again.

Pursuant to Rule 37(a)(5), Sprint seeks to recover its attorney's fees and costs incurred in filing its motion to compel. Rule 37(a)(5)(A) provides the Court that if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The rule further states that the "court must not order this payment if (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Under the circumstances presented here, the Court finds an award of reasonable attorney's fees appropriate. Encore's response brief did not address Sprint's request for fees, and none of the exceptions in Rule 37(a)(5) apply in this case. Sprint's counsel satisfied her obligations under Local Rule 37.2. (Doc. 1–11). In addition, Encore's continued position that the eight topics listed in the June 23 email limited the scope of the deposition after Sprint's counsel clarified otherwise at the deposition and in her August 5, 2015 letter is not substantially justified. Even the June 23 email relied on by Encore expressly states that "this is not an exhaustive list and there may be additional topics that arise based on our continued conversation." (Doc. 1–13). Finally, there are not any circumstances that would make an award of attorney fees and expenses unjust. Accordingly, pursuant to Rule 37(a)(5)(A), Encore should pay the reasonable expenses, including attorney's fees, Sprint incurred in bringing the instant motion. *O'Toole v. Sears, Roebuck and Co.*, 302 F.R.D. 490, 492 (N.D.Ill.2014) (noting that magistrate judges in the Seventh Circuit do not have the authority to issue Rule 37 sanctions but rather may recommend sanctions to the district court if appropriate).

 Sprint also moves for order finding Encore in civil contempt for failure to comply with the subpoena. Civil contempt as a sanction is available to the court. Federal Rule of Civil Procedure 45(g) states that the court for the district where compliance is required "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "To prevail on a request for contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order set forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *United States S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir.2010).

 The Court recognizes that upon receiving the subpoena, Encore worked with Sprint to informally provide the requested information. The Court also accepts Encore's statement that it initially understood the scope of Ms. Belanger's deposition to be limited to the eight topics listed in the June 23 email. However, Encore failed to explain why it did not agree to a deposition regarding the 26 topics listed in the Second Amended Subpoena after having been put on clear notice that Sprint did not intend to limit the subpoena to the eight topics listed in the June 23 email. Nevertheless, the Court declines to find Encore in contempt at this time. Although Sprint "was not *required* to first obtain a court order compelling compliance with its subpoenas before initiating contempt proceedings, . . . the more prudent practice for the court is to issue such an order before entertaining a motion for contempt." *Id.* at 694 (emphasis in original). The Court finds that an award of attorney's fees incurred in bringing the motion to compel is the appropriate remedy at this time. Sprint's request to hold Encore in contempt is denied without prejudice to renewal if Encore fails to comply with this Order.

## CONCLUSION

For these reasons, Sprint's Motion to Compel is granted in all respects except that Plaintiffs' request to hold Encore Repair Services, LLC in contempt is denied without prejudice. By November 10, 2015, Encore shall produce one or more prepared corporate designees to testify regarding the 26 topics set forth in the Second Amended Subpoena. The Court recommends that Sprint be awarded its reasonable expenses, including attorneys' fees and costs, incurred in bringing its motion to compel. Sprint shall file a fee petition with this Court by November 3, 2015 along with argument as to why the expenses are reasonable in this situation. Encore may file any objection to the fee petition by November 10, 2015.