NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 21-3013 and 22-1639

_____

In re: NNN 400 CAPITOL CENTER 16 LLC.,

Debtors

RUBIN & RUBIN P.A.; RUBIN LAW ASSOCIATES, P.A.,

Appellants in 21-3013

DON A. BESKRONE,
Solely as Chapter 7 Trustee of NNN 400 Capitol Center LLC;

v.

WELLS FARGO BANK, NA., as Trustee for the Registered Holders of Comm 2006-C8 Commercial Mortgage Pass-Through Certificates; LNR PARTNERS LLC, a Florida Limited Liability Company; BERKADIA COMMERCIAL MORTGAGE LLC, a Delaware Limited Liability Corporation; *LITTLE ROCK 400 WEST CAPITOL OWNER LLC, a Delaware Statutory Trust; SOMERA ROAD INC, a New York Corporation, TACONIC CAPITAL ADVISORS, a Delaware Limited Partnership

*(Amended Pursuant to Clerk Order dated 05/18/22)

In re:  NNN 400 CAPITOL CENTER 16 LLC., et al.,

Debtors,

Rubin & Rubin P. A.,

Appellant in No. 22-1639

WELLS FARGO BANK, NA., as Trustee for the Registered Holders of Comm 2006-C8 Commercial Mortgage Pass-Through Certificates; LNR PARTNERS, LLC., a

Florida Limited Liability Company; BERKADIA COMMERCIAL MORTGAGE, LLC., a Delaware Limited Liability Corporation; *LITTLE ROCK 400 WEST CAPITOL OWNER, LLC., a Delaware Statutory Trust; SOMERA ROAD INC., a New York Corporation, TACONIC CAPITAL ADVISORS, a Delaware Limited Partnership; DON A. BESKRONE, Chapter 7 Trustee

*(Amended Pursuant to Clerk Order dated 05/18/22)

———————————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action Nos. 1-20-cv-01260; 1-20-cv-01261; 1-20-cv-01262;
1-20-cv-01266; 1-20-cv-01267 and 1-21-cv-00816)
District Judge: Honorable Colm F. Connolly

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
November 14, 2022

Before: AMBRO, KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: December 21, 2022)

———————————

OPINION*

———————————

AMBRO, Circuit Judge

Rubin & Rubin, P.A. and Rubin Law Associates, P.A. appeal the District Court's affirmance of the Bankruptcy Court's orders finding them in violation of several disclosure, conflict, and compliance obligations. We affirm those orders.

**I.**

Debtors are 32 tenant-in-common entities created to acquire an ownership interest in an office building in Little Rock, Arkansas. They filed for bankruptcy in December 2016 after

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

defaulting under a mortgage on the building. In the bankruptcy, the Debtors hired Rubin &

Rubin, P.A. (hereinafter, "R&R") as special corporate and litigation counsel pursuant to § 327(e)

of the Bankruptcy Code, 11 U.S.C. § 327(e).

But after a motion by the Debtors' lenders (the "Lenders") alleging R&R's disclosures

made in connection with its hiring were inaccurate, the Bankruptcy Court found that "Rubin &

Rubin, P.A." was a tradename used by Mark Rubin and his firm I. Mark Rubin, P.A., as well as

Guy Rubin and his firm Rubin Law Associates, P.A. ("RLA"). The Court held that, by failing to

describe the relationship of the firms and attorneys working for the Debtors under the tradename,

R&R made negligent misrepresentations in its § 327(e) application. It ordered R&R to disgorge

fees related to the application and pay the Lenders' fees incurred in bringing their motion (the

"Fee Order").[1]

The surprises continued. The Lenders and the U.S. Trustee came to believe R&R had an

agreement, both prior to and after the bankruptcy filing, with Seth Denison, a loan broker, that

would pay R&R a portion of the fee Denison earned if the Debtors refinanced their property

through him. Lenders also alleged that, prior to the bankruptcy, R&R had represented Moses

Tucker Real Estate ("Moses Tucker"), one of the Debtors' unsecured creditors and partners in

attempting to refinance the property. For these reasons, the Lenders and the U.S. Trustee moved

to disqualify R&R as counsel.

After a hearing, the Bankruptcy Court found R&R did have a pre- and post-bankruptcy fee-

sharing agreement with Denison, thereby creating a pecuniary interest adverse to the Debtors in

---

[1] The Fee Order was subsequently modified by a Reconsideration Order and Clarification Order. The Reconsideration Order acknowledged the Court could not issue fee-shifting sanctions under its inherent authority, as it had initially done, but reimposed the sanctions under § 105(a) of the Bankruptcy Code and, alternatively, Bankruptcy Rule 9011. The Clarification Order directed R&R to make the fee-shifting payments to the Lenders within 30 days.

violation of § 327(e). It also found R&R represented Moses Tucker prior to the bankruptcy, and that its failure to disclose both this representation and the Denison fee-sharing agreement violated §§ 327 and 329 of the Bankruptcy Code as well as Bankruptcy Rules 2014 and 2016. The Court ordered R&R disqualified and its fees disgorged (the "Disqualification Order"). R&R appealed the Fee and Disqualification Orders to the District Court of Delaware.

Six months then passed after R&R was required but failed to make payments under these orders. The Lenders filed a motion for an order to show cause why R&R should not be ordered to comply immediately or be held in contempt. After a hearing, the Court found R&R had failed to make the payments and held it in contempt (the "Contempt Order"). R&R appealed this Order to the District Court. It subsequently affirmed all the Bankruptcy Court's orders. R&R now appeals to us.

## II.

The District Court had jurisdiction to review the orders under 28 U.S.C. § 158(a)(1). We have appellate jurisdiction over this appeal under 28 U.S.C. § 158(d)(1). On appeal, we "stand in the shoes" of the District Court and apply the same standard of review. *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020). We review the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof. *Id*.

## III.

### A. Fee Order

R&R claims the Bankruptcy Court lacked authority to issue the Fee Order under Bankruptcy Rule 9011 and § 105(a) of the Bankruptcy Code. As for Rule 9011, R&R suggests the Lenders did not style their motion as a motion invoking the Rule. It reasons the Lenders'

motion thus did not trigger sanctions under the Rule, and because a Bankruptcy Court cannot shift fees *sua sponte* using it, the Court lacked authority to issue the Order.

The Lenders note R&R did not make its Rule 9011 arguments before the Bankruptcy Court and claim they are waived.[2] In return, R&R suggests only that these objections bear on the Court's jurisdiction and cannot be waived. But none of R&R's objections to the Bankruptcy Court's use of Rule 9011 to shift fees is jurisdictional, as the Bankruptcy Rules "do not create or withdraw federal jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004). Thus, R&R's arguments challenging the Court's basis to issue the Fee Order under the Rule were waived. *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 372 (3d Cir. 2022).[3]

## B. Disqualification Order

R&R makes a host of challenges to the Disqualification Order. But none is persuasive.

First, it argues its pre-petition fee-sharing agreement with Denison did not need to be disclosed under § 329 of the Bankruptcy Code, 11 U.S.C. § 329, and Bankruptcy Rule 2016 because the agreement never created a right to payment. Yet § 329(a) requires disclosure of "compensation paid or *agreed to be paid*" (emphasis added). R&R concedes such an agreement existed. There is no question, then, it was required to be disclosed.

Second, R&R objects to the Bankruptcy Court's finding that a post-petition fee-sharing agreement between it and Denison existed. Here, the Court had ample basis to conclude there was a post-petition fee-sharing agreement, relying on emails from Denison describing the

---

[2] If not done intentionally, the legal term would be "forfeited." *See United States v. Leggett*, 162 F.3d 237, 249-50 (3d Cir. 1998). We are unsure whether, in each case R&R failed to make an argument in Bankruptcy Court, it did so intentionally. Thus, for convenience, we continue to use "waived" throughout this opinion.

[3] Having so concluded, we need not consider whether, alternatively, the Court had authority under Bankruptcy Code § 105(a).

arrangement and R&R's reimbursement of his out-of-pocket fees. We are not persuaded otherwise.

Third, R&R suggests the Bankruptcy Court's finding that it represented Moses Tucker, the basis of its Bankruptcy Rule 2014(a) violation, was inconsistent with an earlier finding that R&R did not represent Moses Tucker. Even assuming there was an inconsistency, the Court's ruling here relied on Mark Rubin's direct testimony that he represented Moses Tucker pre-petition. JA 2121, 5949. And R&R raises this argument for the first time on appeal without explaining what exceptional circumstances require that we address this argument; hence, it is too late to be before us. *See Taha v. Cnty. of Bucks*, 862 F.3d 292, 299 (3d Cir. 2017).

Fourth, R&R claims the Bankruptcy Court abused its discretion when it admitted prior deposition testimony of Lori McGhee (a former Moses Tucker employee) and Seth Denison. We need not reach the merits of these objections, as any purported error would have been harmless. *GN Netcom, Inc., v. Plantronics, Inc.*, 930 F.3d 76, 88 (3d. Cir. 2019). McGhee's testimony related to R&R's Moses Tucker representation. But in finding the representation existed, the Court primarily relied on Mark Rubin's testimony, which was given under oath on two separate occasions and was consistent with McGhee's. As for Denison's testimony, it bore on whether a fee-sharing agreement existed between him and R&R. In finding it did, the Court determined his testimony unreliable, instead focusing on emails between the parties and Mark Rubin's own statements regarding reimbursement. Given the strength of the other evidence, we find it "highly probable" the admission of the depositions "did not affect the outcome of the case." *Id.*

Fifth, R&R argues, in two parts, the Bankruptcy Court erred by not considering mitigating circumstances that excused its various missteps. The first claim amounts to a suggestion that the Debtors' main bankruptcy counsel (Thomas Francella), and not it, is

6

responsible for those errors. But the relevant disclosure and conflict requirements required no esoteric bankruptcy knowledge to understand, so why would we offload their compliance responsibility to a different lawyer? We will not, as "[a]n attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments." *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720 (6th Cir. 2001). We also reject R&R's second contention that the Bankruptcy Court's exclusion of Francella's testimony—which it claims would show it relied on advice from him to its detriment—was prejudicial.

R&R's final challenge to the Disqualification Order is it improperly imputed the conduct of Mark Rubin and I. Mark Rubin, P.A. to, and thus improperly sanctioned, Guy Rubin and RLA. The theme here is the same as in R&R's remaining arguments: the sanctioned parties should be viewed as one law firm when it is to their benefit, but two firms when that is to their benefit. In any case, this argument was not raised in the Bankruptcy Court and has been waived. *Taha*, 862 F.3d at 299.

### C. Contempt Order

R&R raises three objections to the Contempt Order. The first two focus on a footnote in the Order clarifying that when the Disqualification Order refers to "Rubin & Rubin, P.A." as responsible for disgorgement of fees, this "includes I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin, P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin P.A. trade name." JA6147 n.1. The third is procedural.

R&R asserts the footnote in the Contempt Order improperly extended liability to parties beyond R&R, because only "Rubin & Rubin, P.A.," and none of its constituent parts, was explicitly named in the Disqualification Order. But references to "Rubin & Rubin, P.A" in the Disqualification Order clearly refer to the group of which both Mark and Guy Rubin and their

respective firms were part. Thus, we cannot say the Contempt Order extended liability beyond parties already responsible.

Following the same thread, R&R again insists the Contempt Order expanded liability under the Disqualification Order. But its claim now is that the expansion of liability was a modification of that order on appeal, and thus a violation of the "divestiture doctrine." For the reasons already stated, we see no expansion of the Disqualification Order and this argument fails.

Finally, R&R maintains its due process rights were violated when it was held in contempt without being given—after the hearing on the motion for an order to show cause—a second evidentiary hearing on its ability to pay the amounts ordered to be disgorged.[4] We think here R&R was not prejudiced because it had sufficient notice and a full opportunity to be heard at the hearing on the show cause motion. The motion described the simple reason the Lenders believed R&R's actions were worthy of contempt: it did not make its required payments. And at the hearing R&R offered the same challenges to the motion it makes in this appeal: it impermissibly reached Mark and Guy Rubin individually. Also, the evidence it offered after the hearing on its ability to pay—its declaration making a bare conclusion that Mark Rubin's firm was "incapable of complying"—shows this defense would have been futile. JA6150. R&R made a deliberate and

---

[4] We have not previously decided whether, after a motion for an order to show cause and hearing on that motion, a contempt order can issue without a second, intervening hearing. R&R cites to a Seventh Circuit decision to argue a motion for an order to show cause should be interpreted strictly as "asking *only* for a preliminary order directing the alleged contemnor to show cause why the court should not find in him in contempt." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010) (emphasis in original). But the same decision allowed for limited exceptions to the rule, citing other authorities that recognize "a request for a show cause order usually will be entertained and treated as a motion, *if doing so will not prejudice the opposing parties.*" *Id.* (citing 5 Wright & Miller, Federal Practice and Procedure § 1195 (3d ed. 2004)) (emphasis in original). As noted in the text, we discern no process prejudice here.

strategic choice to air its preferred contentions at the show cause hearing. A second hearing for an obviously futile defense would waste the Court's time and resources.

Courts must be able to rely on full and true disclosures to do their job properly. And while all parties are entitled to have their claims fairly heard, courts have scarce resources to meet the many pressing demands put on them. We expect attorneys to appreciate these realities.

*   *   *

For the reasons stated, we affirm the District Court's judgments affirming the rulings of the Bankruptcy Court.