

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KITTITAS COUNTY, a municipal corporation and political subdivision of the State of Washington, | ) ) ) ) | No. 34760-5-III |
| Plaintiff, | ) ) | |
| v. | ) ) | OPINION PUBLISHED IN PART |
| SKY ALLPHIN, ABC HOLDINGS, INC., CHEM-SAFE ENVIRONMENTAL, INC., | ) ) ) ) | |
| Appellants, | ) ) | |
| and | ) ) | |
| THE WASHINGTON STATE DEPARTMENT OF ECOLOGY, | ) ) ) | |
| Respondent. | ) | |

No. 34760-5-III
*Kittitas County v. Sky Allphin, et al.*

SIDDOWAY, J. — In this Public Records Act (PRA)[1] appeal, Sky Allphin[2] challenges the trial court's (1) rejection of his objections to a show cause motion made by the Washington State Department of Ecology (Ecology), (2) denial of his request for an in camera review, and (3) findings, conclusions and judgment determining that Ecology did not violate the PRA.

In the published portion of the opinion, we hold that an agency can rely on CR 7(b)(1) to move for judicial review under RCW 42.56.550(3), and the "show cause" character of Ecology's motion, while not the procedure provided by that rule, did not prejudice Mr. Allphin. We address his remaining assignments of error in the unpublished portion of the opinion. Finding no error or abuse of discretion, we affirm.

FACTS AND PROCEDURAL BACKGROUND

At relevant times, Chem-Safe Environmental, Inc. operated a hazardous waste transport and transfer facility in Kittitas County (County). ABC Holdings, Inc. is Chem-Safe's parent company. Sky Allphin is the president of both companies.

This is the most recent appeal in a lawsuit commenced in February 2013 by Kittitas County. For a couple of years before 2011, the County's Public Health

---

[1] Ch. 42.56 RCW.
[2] Mr. Allphin was the record requester, although ABC Holdings, Inc. and Chem-Safe Environmental, Inc. were named defendants below and collectively asserted the cross claims whose disposition is appealed. For simplicity, we refer to the three parties collectively as "Mr. Allphin."

Department, assisted by hazardous and solid waste specialists from Ecology, tried without success to bring Chem-Safe into compliance with waste-handling licensing regulations. On January 27, 2011, having determined that operations at the Chem-Safe facility were a public nuisance, the County issued a notice of violation and abatement requiring that all operations be suspended until a solid waste permit was obtained. During Chem-Safe's unsuccessful administrative appeals and the judicial review that followed,[3] Mr. Allphin made a number of public record requests to the County and Ecology seeking records pertaining to the waste facility litigation. He began with similar, broad requests that he served on both agencies on October 17, 2012.

Roger Johnson, the public records coordinator at Ecology's Central Regional Office, handled Ecology's response. He indicated in his initial response that it would take until November 19, 2012, for Ecology to complete its response, although he later realized and notified Mr. Allphin that it would take longer. Ecology ultimately released over 14,000 pages of records to Mr. Allphin in three installments:

On <u>November 15, 2012</u>, Mr. Johnson produced records from staff members in the Waste 2 Resources Program and the Hazardous Waste and Toxics Reduction Program. Ecology's Southwest Regional Office provided Mr. Allphin with its responsive records

---

[3] *See ABC Holdings, Inc. v. Kittitas County*, 187 Wn. App. 275, 284-85, 289, 348 P.3d 1222, *review denied*, 184 Wn.2d 1014, 360 P.3d 817 (2015).

3

that day by providing a hyperlink to an Ecology file transfer protocol (FTP) site from which he could download documents;

On January 11, 2013, Mr. Johnson provided Ecology's first set of Toxics Cleanup Program records, which was by far its largest installment of production. This production was also made by providing a hyperlink to an FTP site from which Mr. Allphin could download documents; and

On February 26, 2013, Mr. Johnson provided a small third installment of responsive records to Mr. Allphin's lawyer.

During the period Mr. Johnson was responding to the request, he was contacted by Kittitas County Deputy Prosecutor Zera Lowe, who was concerned that Ecology might have records in its possession that the County considered attorney-client privileged or work product. She asked Mr. Johnson to provide her with any Chem-Safe related correspondence located at Ecology that was between the County's legal counsel and Ecology staff. Mr. Johnson obliged. Ms. Lowe later notified Mr. Johnson of 19 records she believed were exempt from disclosure and asked that Ecology defer its production to Mr. Allphin to give the County the opportunity to seek an injunction preventing their release.

In producing Ecology's third and otherwise final installment of records in February 2013, Mr. Johnson provided Mr. Allphin's lawyer with a list of the 19 records that Kittitas County was asking the superior court to review for their exempt status. In a

declaration filed below, Mr. Johnson testified that with the third installment, "I had disclosed to Mr. Allphin or his attorney everything yielded by the Central Regional Office's search for documents responsive to the October 17, 2012 request, except for the 19 documents withheld pursuant to the County's request." Clerk's Papers (CP) at 234.

The County's decision to seek a determination of the exempt status of the 19 records led to its commencement of the action below. On February 22, 2013, the County sued Mr. Allphin, his companies, and Ecology, to enjoin Ecology's production of the 19 records. The temporary restraining order requested by the County was entered on May 6, 2013, and was extended thereafter, so that the trial court could review the 19 records in camera. On December 19, 2013, the court permanently enjoined Ecology from releasing 11 of the 19 records. Ecology produced the 8 records that were not subject to the injunction on December 30, 2013. Mr. Allphin appealed the injunction and other rulings involving the County and this court affirmed.[4] A petition for review was granted in part by the Washington Supreme Court and is pending.

During the four months Ecology was collecting and producing records in response to the October 2012 request and in years thereafter, Mr. Allphin submitted dozens of additional requests. Ecology identifies a total of 28 requests by Mr. Allphin that were either for additional public records, for assistance, for duplicates, or for expedited

---

[4] *See Kittitas County v. Allphin*, 195 Wn. App. 355, 381 P.3d 1202 (2016), *review granted in part*, 187 Wn.2d 1001 (2017).

disclosure. Mr. Allphin's assignments of error in this appeal involve only one other public record request, however: a request made on January 8, 2014, which is discussed in more detail below.

In March 2014, the trial court granted Mr. Allphin leave to amend his original answer to the County's declaratory judgment action. The court was persuaded that Mr. Allphin always wanted affirmative relief from the County, but pleaded unartfully in his answer filed on March 20, 2013. It allowed him to amend to assert counterclaims against the County.

On November 3, 2014, Mr. Allphin filed a second amended answer, this time adding cross claims against Ecology. He then embarked on discovery. By December 2015, he had served two sets of interrogatories and requests for production on Ecology and deposed five Ecology employees. Ecology had responded to the discovery and produced thousands of pages of records in response to the requests for production.

On January 26, 2016, Ecology, wanting to resolve the matter with a determination by the court that it had not violated the PRA, filed a motion for an order to show cause. It originally noted the hearing for March 10, 2016, but renoted it for April 1, 2016, at Mr. Allphin's lawyer's request. The hearing was delayed further as a result of objections and motions raised by Mr. Allphin and by the court's own schedule.

When the show cause motion was ultimately heard in August 2016, Mr. Allphin advanced claims of PRA violations he had asserted in a cross motion "for partial relief,"

but simultaneously objected to Ecology's show cause motion as unlawful procedure. CP at 2194. Essentially, he contended that a few issues could be resolved in his favor but otherwise, unless summary judgment was appropriate, discovery should continue until *he* was ready to move for an order to show cause under RCW 42.56.550(1). He also asked the court to review in camera a large number of Ecology documents.

The trial court rejected Mr. Allphin's objections to the show cause procedure, refused his request to conduct further in camera review, found that Ecology had not violated the PRA, and entered judgment in Ecology's favor. Mr. Allphin appeals.

## ANALYSIS

Mr. Allphin makes five assignments of error. We address them in the order he presents them.

### *Assignment of Error 1: The trial court erred when it granted Ecology's motion to show cause and dismissed Chem-Safe's cross claims*

Mr. Allphin contends that the trial court's disposition of Ecology's show cause motion was error for two reasons: first, because "no statute, rule, or case authorizes an agency to use a show cause hearing to dispose of a requester's claims" and second, because discovery was "admittedly incomplete and due to the requester." Br. of Appellant at 4.

Illegal procedure

RCW 42.56.550(1) and (2) expressly make a show cause procedure available to public record requesters wishing to require an agency to demonstrate why it refuses to allow inspection or copying, or why its estimate of response time is reasonable. In support of his "illegal procedure" argument, Mr. Allphin points out that the provisions authorize a show cause procedure upon the motion "of any person" who has "been denied an opportunity to inspect or copy a public record by an agency" or who "believes that an agency has not made a reasonable estimate of the time that the agency requires to respond." *Id.* Because the provisions speak of motions by only requesters, not agencies, he argues that an agency does not have the same right to note a hearing for judicial review of its action.

Not to put too fine a point on it, but there was no *statutory* basis for the cross claims Mr. Allphin asserted against Ecology. That is not a problem, because as our Supreme Court held in 2005, actions under the PRA are not special proceedings, so a party can proceed in any manner provided by the civil rules. "[A]ctions under the [PRA] are not [statutorily defined]. The statute simply does not define a special proceeding exclusive of all others." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 105, 117 P.3d 1117 (2005). For that reason, the show cause procedure provided by RCW 42.56.550(1) and (2) "is discretionary, not mandatory," *Spokane Research*, 155

Wn.2d at 106, and a party can initiate an action by a complaint in intervention even though that procedure is not addressed by the PRA. *Id.* at 105.

Washington courts have not placed limits on civil rule procedures that are available in PRA actions. *See, e.g.*, *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 715-16, 261 P.3d 119 (2011) (discovery is available to a requester under the civil rules, even though discovery is not addressed by the PRA). Agencies and objectors to disclosure have the same right to proceed under the civil rules as do record requesters. *E.g.*, *City of Lakewood v. Koenig*, 160 Wn. App. 883, 889-90, 250 P.3d 113 (2011) (civil rules permitting discovery apply, and "there is no authority in the civil rules to limit their application to plaintiffs"); *Rufin v. City of Seattle*, 199 Wn. App. 348, 360-63, 398 P.3d 1237 (2017), *review denied*, 189 Wn.2d 1034, 407 P.3d 1154 (2018) (agency may make a CR 68 offer of judgment in a PRA action); *John Doe G v. Dep't of Corr.*, 197 Wn. App. 609, 629, 391 P.3d 496 (2017), *rev'd*, No. 94203-0 (Wash. Feb. 22, 2018) (objectors to disclosure of records under the PRA can be certified as a class under CR 23), http://www.courts.wa.gov/opinions/pdf/942030.pdf.

It is true that the use of a show cause procedure is not contemplated in the civil rules except for the reference in CR 60(e)(2) to the procedure used in vacating a judgment. 9 DAVID E. BRESKIN, WASHINGTON PRACTICE: CIVIL PROCEDURE FORMS AND COMMENTARY § 7.45 author's cmt. at 145 (3d ed. 2000). Like the federal rules of civil procedure, our civil rules provide generally that the application to the court for an

9

order shall be by motion under CR 7(b)(1). The distinct characteristics of a "show cause"

motion have been described by the Seventh Circuit Court of Appeals:

> Show-cause motions historically served two purposes: First, the motion was a way to bring matters to the district court more speedily than other methods of presentment prior to the Federal Rules of Civil Procedure. *See* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1195 (3d ed. 2004). Second, the granting of a show-cause motion provided notice to the nonmoving party of what he must do to avoid some other court action, such as the issuance of an injunction or writ. *Id.* A show-cause motion essentially asks a district court to issue an order requiring the nonmovant to show the court by a certain date why the court should not take some other action [. . . .] In other words, the show-cause order satisfies the due-process notice requirement by giving the nonmoving party notice of his opportunity to respond before the substantive request for relief is entertained.

*United States Sec. & Exch. Comm'n v. Hyatt*, 621 F.3d 687, 695 (7th Cir. 2010).

As explained by the Wright and Miller treatise, the drafters of the federal rules

"apparently felt that the historical and technical procedures surrounding [use of orders to

show cause] did not comport with the philosophy of simplifying procedure underlying the

federal rules." 5 WRIGHT & MILLER, *supra*, § 1195, at 70. As the authors further

explain, under civil rules a party can obtain the same "show cause" result by filing a

motion and obtaining an order to shorten time within which the motion will be heard. *Id.*

at 70-71. As a result, "a request for a show cause order usually will be entertained and

treated as a motion, if doing so will not prejudice the opposing parties." *Id.* at 71 & n.5

(collecting cases).

In requiring that applications for court orders be by motion and providing a process for hearing a motion on shortened time, Federal Rules of Civil Procedure (FRCP) 7(b) and 6(c)(1)(C)[5] are substantively the same as CR 6(d) and 7(b), so we may look to decisions and analysis of the federal rules for guidance. *Am. Disc. Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 37, 499 P.2d 869 (1972). We find persuasive the federal cases in which a show cause procedure that has not prejudiced a responding party is reviewed as if the moving party had followed court rules. *E.g.*, *Marshall v. Weyerhaeuser Co.*, 456 F. Supp. 474, 477 n.2 (D.N.J. 1978) ("While the Federal Rules of Civil Procedure do not

---

[5] *Hyatt* points to FRCP 7(b) and 6(c)(1)(C) as authorizing the equivalent of show cause procedure.
   FRCP 7(b) provides:

MOTIONS AND OTHER PAPERS.
   (1)   *In General.*  A request for a court order must be made by motion.  The motion must:
            (A)  be in writing unless made during a hearing or trial;
            (B)  state with particularity the grounds for seeking the order;
      and
            (C)  state the relief sought.

FRCP 6(c)(1)(C) provides:

MOTIONS, NOTICES OF HEARING, AND AFFIDAVITS.
   (1)   *In General.*  A written motion and notice of the hearing must be served at least 14 days before the time specified for the hearing, with the following exceptions:
            . . . .
            (C)  When a court order—which a party may, for good cause, apply for ex parte—sets a different time.

specifically recognize an Order to Show Cause, federal courts have uniformly acknowledged and treated it similarly to the typical motion but for its preferential place on the court's docket.").

Entertaining Ecology's show cause motion and treating it as if it had been properly brought under CR 7(b) did not prejudice Mr. Allphin.  Ecology did not seek an expedited hearing.  It provided more than the notice required for a motion under the civil rules even before it honored Mr. Allphin's request to defer the hearing by 3 weeks.  Almost 3 years had passed since Ecology had completed virtually all of its document production and the County had sued.  Over 2 years had passed since the trial court resolved the County's claim of exemption.  Over 14 months had passed since Mr. Allphin had amended his answer to assert his cross claims.  As discussed below, there had been a full opportunity for discovery.  Ecology appears to have brought a show cause motion simply to parallel the procedure used when judicial review is sought by a requester under RCW 42.56.550(1) and (2).

Whether a record requester makes a show cause motion under RCW 42.56.550(1) or (2) or an agency makes a motion for judicial review under CR 7(b), the nature of the hearing is the same: RCW 42.56.550(3), authorizing hearings based solely on affidavits, applies to "[j]udicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520."  Contrary to the suggestion of Mr. Allphin, Ecology never contended that by bringing a show cause motion it had shifted the burden of persuasion to

him. *See, e.g.*, CP at 109 (Ecology's motion). The trial court properly held Ecology to its burden. CP at 2654 (Trial Court's Finding of Fact 2).

The PRA is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). But the legislature did not intend that disputes over whether an agency has complied with its important obligations under the PRA should drag on indefinitely. *Cf.* RCW 42.56.550(6) (establishing a one-year statute of limitations for PRA actions against agencies). As with other civil disputes, parties have means under the civil rules for moving a dispute toward an orderly resolution. The trial court did not proceed illegally by engaging in judicial review at the request of Ecology.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

### Incomplete discovery

The section of Mr. Allphin's argument addressing his allegation that "discovery is admittedly incomplete and due to the requester" includes no citation to the record in support of that assertion. Br. of Appellant at 18; *see also id*. at 18-21. We have also

reviewed Mr. Allphin's statement of the case for any support and find only four relevant record citations, none helpful to his argument.

His first relevant record citation is to the entire 75 pages of his February 11, 2016 motion and affidavit for an order compelling discovery and the second is to the trial court's March 22, 2016 letter ruling in which his motion to compel "is denied entirely." Br. of Appellant at 6-7 (citing CP at 438-513, 933).

The third is to the court's handwritten discovery order dated June 3, 2016, and its attached handwritten list of discovery requests. The order is explained in a submission by Ecology:

> To bring finality to this public records case, the Court on June 3, 2016, granted a final round of discovery to [Mr. Allphin], directing [him] to present, on that very day, one last set of production requests to [Ecology], with a copy to the court. [Mr. Allphin] submitted 12 requests.

CP at 1529. The court's order set a date by which Ecology should respond to the 12 final requests, a date by which Mr. Allphin should reply, and set a July 8, 2016 telephonic conference to "deal with any remaining issues." Br. of Appellant at 7 (citing CP at 1523-25).

Mr. Allphin's fourth and last relevant record citation is to the trial court's July 13, 2016 order that evidently resolved disputes over Ecology's responses to his final 12 discovery requests, stating, "Discovery has been completed and the Court is now ready to

hear oral argument on [Ecology's] Motion to Show Cause and Chem-Safe's Motion for Relief." Br. of Appellant at 7 (citing CP at 2191).

None of Mr. Allphin's four *relevant* record citations support his contention that discovery was incomplete.

*Assignment of Error 2: The trial court erred when it denied Chem-Safe's
motion to review records in camera*

On August 4, 2016, one week before Ecology's January 2016 show cause motion was finally scheduled to be heard, Mr. Allphin filed a motion asking the court to conduct an in camera review of a large number of Ecology records. Under RCW 42.56.550(3), courts may review in camera any record that an agency claims is exempt from the PRA. "This court reviews the trial court's decision on whether or not to conduct an in camera review for abuse of discretion." *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 867, 288 P.3d 384 (2012). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Mr. Allphin's motion was based, first, on a contention that Ecology had records that had been "secreted away from [him]" at a "separate location or site." CP at 2203. He received a record in April 2016 that referred to documents that were on "the AG Secure Site Chem Safe Log—Exempt." *Id.* He complained that Ecology "should not be

15

able to make records disappear from the public by 'uploading' them to its special

website." CP at 2204.

Ecology presented evidence that it maintains an electronic site for the purpose of

facilitating attorney general review of Ecology documents. In its response to Mr.

Allphin's motion for in camera review, Ecology's lawyers explained that any records on

the secured site that were related to Chem-Safe

> are there only because Ecology put them there in a communication with its
> attorney. *In order to put them in that communication medium Ecology must
> possess these documents independently of that medium.* Ecology has
> already fully searched and provided all documents outside of that medium
> that were responsive and not enjoined.

CP at 2350-51 (emphasis added). In short, the records were explained as being digital

copies of records that were searched in responding to Mr. Allphin's PRA requests and

produced where appropriate. For convenience of the attorney general and the agency,

copies simply reposed in this mutually accessible site. The court did not abuse its

discretion in refusing to conduct what would have been a very time-consuming review

for which no good reason was offered.

Mr. Allphin also complained in his motion for in camera review that records

produced on May 20, 2016, by Jackie Cameron, who had by then replaced Mr. Johnson

as Ecology's records custodian, were redacted, in some cases heavily, with no

accompanying exemption or redaction log.

The subject records dated back to April 1, 2013. On or before that date, Kittitas County Deputy Prosecutor Lowe evidently asked Ecology's lawyers to provide copies of the 19 documents it was withholding from Mr. Allphin at the County's request. Janet Day, a legal assistant to an Ecology lawyer, transmitted the documents being withheld to the County on the afternoon of April 1, 2013 in five installments.[6] Ms. Cameron's May 20, 2016 e-mail to Mr. Allphin stated she was transmitting the five e-mails, but on May 27, Mr. Allphin claimed he had not received the first. On May 31, Ms. Cameron responded by e-mail, apologizing and stating she was "providing the April 1, 2013 email with attachments that was inadvertently dropped during the review process." CP at 2145.

One of the 12 final discovery requests that the trial court allowed Mr. Allphin to submit to Ecology on June 3, 2016, was for

> [t]he five separate emails from Ms. Day to the County 4/1/2013 as partially
> provided by Jackie Cameron on 5/20/2016. [A]ll five emails and each
> attachment is requested. The emails and attachments are requested in
> native format.

---

[6] The documents as produced to Mr. Allphin in May 2016 are out of order in the record. The first of Ms. Day's e-mails appears at CP 2147, bears a transmission time of 2:52 PM and by its terms, was forwarding seven documents, numbered 01.pdf to 07.pdf.

The second e-mail appears at CP 2090, bears a transmission time of 2:55 PM, and was forwarding a single "large" document, numbered 08.pdf.

The third appears at CP 2093, bears a transmission time of 2:56 PM, and was forwarding three documents, numbered 09.pdf to 11.pdf.

The fourth appears at CP 2087, bears a transmission time of 2:58 PM and was forwarding three documents, numbered 12.pdf to 14.pdf.

The fifth appears at CP 2084, bears a transmission time of 3:01 PM and was forwarding five documents, numbered 15.pdf to 19.pdf.

CP at 1525.

In Ecology's response to this discovery request that was filed with the court on

June 20, it said:

> Chem-Safe already has the documents responsive to this request.
> It received them from Ecology. Chem-Safe possessed them at the time
> it represented to this Court that it did not, on the basis of which the Court
> granted a continuance.
> This discovery request is related to a follow-up to a PRA request
> that was made outside this litigation. Cameron Decl. ¶ 5, Ex. F. Not only
> is this an improper basis for delaying this case, but Chem-Safe was in
> possession of these records at the time of making these repeated requests
> on June 3, 2016, having received them from Ecology.

CP at 1536. Ecology's response was supported by a declaration of Ms. Cameron, who

pointed out that her production of the e-mails on May 20, 2016, followed up on a public

record request to Ecology made by Mr. Allphin in April 2016 that was not at issue in this

lawsuit.

As previously recounted, the trial court ruled on July 13, 2016, that discovery was

complete, so the trial court evidently denied this final discovery request by Mr. Allphin.

He has not obtained and filed a verbatim transcript of proceedings of the final discovery

conference, so we do not know why his discovery request was denied. The fact that Mr.

Allphin's communications with Ms. Cameron dealt with a public record request not

involved in this case would have been a sufficient reason.

With that background in mind, we return to Mr. Allphin's challenge to the trial

court's refusal to review these same documents in camera. In resisting Mr. Allphin's

18

request for in camera review, Ecology argued that it was a transparent attempt to get around the court's denial of Mr. Allphin's request for discovery of the same documents a month earlier. Ecology reminded the court that the April 2016 public record request to which Ms. Cameron was responding was not at issue in this case. And finally, having gone back through Ecology's production in response to the April 7, 2016 public record request, one of Ecology's lawyers provided a declaration identifying where all of the attachments about which Mr. Allphin was complaining could be found in materials that had been produced to him on May 20 and 31, 2016.

As for the redactions and the lack of a log, recall that the 19 attachments were the documents the trial court reviewed in camera in December 2013, finding 11 to be exempt. Ecology's lawyer's declaration stated that the redaction of material in the attachments was done "for the sole purpose of complying with this Court's permanent injunction and Order Sealing Records." CP at 2378.

The trial court did not abuse its discretion in refusing the request for in camera review.

*Assignment of Error No. 3: The trial court erred when it denied Chem-Safe's partial motion for relief as to several categories of records wrongfully withheld by Ecology*

Although objecting to Ecology's show cause motion, Mr. Allphin attempted to establish several records (or record categories) were unlawfully withheld by Ecology, four of which he argues on appeal: (1) 4 sketches of the location of a waste spill alleged

to have occurred at Chem-Safe's facilities, (2) a copy of Chem-Safe's soil sampling plan that Mr. Allphin claims was received and reviewed by Norman Peck, an Ecology employee, (3) "53 emails and nine documents" that Mr. Allphin claims were responsive to his October 2012 request but that he contends were not produced until December 23, 2014, and (4) records Mr. Allphin claims were responsive to a January 8, 2014 request that were not released until 2016. We first address the 4 sketches and "53 emails and nine documents" before turning to the other two records or record categories.

Four sketches, 53 e-mails, and 9 documents

Four sketches were prepared by Norman Peck to depict the floor of the Chem-Safe facility so that another Ecology employee could let him know where various chemicals were stored. When deposed, Mr. Peck testified that he provided the sketches to Mr. Johnson in response to Mr. Allphin's October 2012 public record request. This is supported by electronic mail he sent to Mr. Johnson on October 18, 2012, stating "I'll bring down about 4 'hard copy' documents I haven't stored electronically." CP at 2419. Mr. Peck testified that he did not know whether his sketches were digitized by others.

Ecology's show cause motion was supported by a 25-page, 76-paragraph declaration from Mr. Johnson recounting the history of his records search and document production to Mr. Allphin on behalf of Ecology. In the declaration, he testified that upon receiving the request, he contacted Mr. Peck and other Ecology employees to obtain any responsive records. He determined that Mr. Peck was the primary person within

20

Ecology's Toxics Cleanup Program with responsive documents. Once he determined which Ecology staff had responsive records, he set up a central repository where staff could place the records provided.

Mr. Peck provided many of his responsive documents fairly quickly, but then went on a four-week annual leave. For that reason, the Toxics Cleanup Program documents were delayed, as Mr. Johnson explained to Mr. Allphin in an e-mail sent on December 17, 2012. They were not provided until the second, January 2013 installment of records that was made available for Mr. Allphin to electronically download with a FTP link.

On June 9, 2014, in response to a later e-mail from Mr. Allphin questioning the completeness of Ecology's production, Mr. Johnson attempted to allay his concern, but added, "If you feel there is more in the central file room and staff paper files please feel free to schedule a review at the Yakima office." CP at 419. Six months later, on December 8, 2014, Mr. Allphin requested an opportunity to come to Ecology's office to review its physical Chem-Safe files. Ms. Cameron, who was by then assisting with record production, scheduled an appointment for Mr. Allphin to review the physical files on December 23, 2014. To assist Ms. Cameron and Mr. Allphin, Mr. Johnson created three compact disks of all the documents he had previously released to Mr. Allphin, intending that Mr. Allphin could take copies of the disks with him.

Mr. Allphin kept the appointment, the physical files were made available to him, and he identified some documents for copying. Ms. Cameron provided him with the requested copies and also gave him the three compact disks.

Mr. Allphin claims that upon reviewing the three compact disks he received on December 23, 2014, he identified 53 e-mails and 9 documents that had never before been produced to him by Ecology. But according to Mr. Johnson's declaration, the three compact disks contained only documents previously provided to Mr. Allphin and what Mr. Johnson thought might be helpful documentation of Mr. Johnson's and Mr. Allphin's correspondence.

On July 20, 2015, Mr. Allphin again requested an appointment to inspect Ecology's physical Chem-Safe files. Ms. Cameron obliged, although she wrote to Mr. Allphin that the physical files had not changed since they were last made available for his review on December 23, 2014. An appointment was scheduled for his repeat review of the documents on July 28, 2015. Mr. Allphin again identified records for copying. Mr. Allphin claims that it was not until this second inspection of the files on July 28, 2015, that Mr. Peck's four sketches were made available to him. But according to Ms. Cameron's declaration, of the documents Mr. Allphin requested be copied in July 2015, "all . . . had been previously provided to Mr. Allphin in response to his public record requests." CP at 194-95.

22

The timing of production of the 4 sketches, 53 e-mails, and 9 documents comes down to a credibility issue. The panel confirmed at oral argument that Ecology did not keep a complete Bates-numbered copy of the documents it produced and when, nor did Mr. Allphin keep a complete record of what he received and when. Ecology argues that other than Mr. Allphin's reported recollection, he has no way of proving that the sketches, e-mails, and documents were not produced electronically by Ecology within the first four months following his October 17, 2012 request and in some cases, also located in the hard copy files that he was offered the opportunity to review on June 9, 2014. Mr. Peck has testified that he timely produced his sketches to Mr. Johnson, and his e-mail tends to support this. Mr. Johnson has testified that his timely installments of production to Mr. Allphin included everything he received from Ecology employees other than the 19 withheld documents. He has testified that apart from including some helpful documentation of the correspondence between himself and Mr. Allphin, the three compact disks he created contained only the records he had produced earlier. Ms. Cameron has testified that Mr. Peck's sketches were always in Ecology's hard copy files made available to Mr. Allphin, but he did not request copies until his second, July 2015 visit to Ecology's offices.

The PRA expressly authorizes the trial court to "conduct a hearing based solely on affidavits," as the trial court did here. RCW 42.56.550(3). And when judicial review is based solely on a documentary record, our Supreme Court has held that appellate review

23

of a trial court's findings and conclusions is de novo—unlike where there has been

testimony in the PRA proceeding, in which case we review the findings for substantial

evidence. *Zink v. City of Mesa*, 140 Wn. App. 328, 336, 166 P.3d 738 (2007) (citing

*O'Connor v. Dep't of Soc. & Health Servs.*, 143 Wn.2d 895, 904, 25 P.3d 426 (2001)).

The *reason* for the different standards of review is important and affects our

decision on this issue, in this case. As explained in *State v. Garza*, 150 Wn.2d 360, 366,

77 P.3d 347 (2003):

> [T]he de novo standard is better applied when the appellate court is in the
> same position as the trial court and may make a determination as a matter
> of law. The abuse of discretion standard is appropriate when a trial court
> is in the best position to make a factual determination.

We are not in the same position as the trial court to make the determination

whether Ecology employees or Mr. Allphin are more reliable reporters of what records

had been produced. We have a declaration in which Mr. Allphin claims the sketches, 53

e-mails and 9 documents were not timely produced. We have declarations of Ecology

employees that say they were. The trial court was looking at the same declarations, but

its findings were further informed by its several year history with the case and the

discovery disputes it had been required to resolve. A number of the trial court's findings

credit the declarations of Ecology's employees and its other evidence, implicitly finding

the Ecology employees credible and reliable. *See* CP at 2643-45 (Findings of Fact 1-17).

Its findings explicitly discount the reliability of Mr. Allphin's memory, stating, "Mr.

24

Allphin repeatedly conveyed confusion about what documents he possessed and when he obtained them." CP at 2644 (Finding of Fact 8).

We review this issue de novo but with some deference to a trial court that was "in the best position to make a factual determination" about reliability. We affirm the trial court on this issue.

*Annotated Chem-Safe Sample Plan*

In response to a PRA request to Kittitas County, not Ecology, Mr. Allphin received a copy of a sampling and analysis plan Chem-Safe provided to the County that bore handwritten marginal notations and an apparent "sticky note" on its cover. On the sticky note is allegedly hand written,[7]

> Chem Safe Sampling Plan with [Toxics Cleanup Program] Norm Peck's comments. He provide [sic] guidance doc for oil sites & ground water testing.

CP at 2441; Br. of Appellant at 26. Mr. Allphin argues that the record received from Kittitas County proves that Mr. Peck received and reviewed the sampling plan and that Ecology must have a copy of the same record in its possession that it failed to disclose. Ecology did not produce a copy of the record in responding to Mr. Allphin's record

---

[7] We say "allegedly" because the copy included in the Clerk's Papers is too poor for us to confirm that this is what the note says.

25

request.  In responding to discovery, it stated that no copy of the record can be found at Ecology.

Mr. Allphin's claim that Ecology possessed and is silently withholding the record is unsupported by any testimony from Mr. Peck, any evidence that the handwriting on the record is his, or any testimony that Ecology ever had a copy of the record.  Mr. Allphin's theory about the record's provenance and whereabouts is based entirely on his speculation from the content of the sticky note.

By statute, Ecology bears the burden of proving the application of an exemption to a document being withheld.  RCW 42.56.550(1).  It bears the burden of demonstrating that it provided a reasonable estimate of a response time.  RCW 42.56.550(2).  But when it comes to whether Ecology possessed but withheld the annotated sampling plan, "the general proposition of law that the burden of proving a proposition is upon him who asserts it" applies.  *In re McKachney's Estate*, 143 Wash. 28, 30, 254 P. 455 (1927).  The trial court reasonably found Mr. Allphin's evidence insufficient to prove that Ecology possessed but withheld a copy of the annotated sampling plan.

*January 8, 2014 request*

Finally, on January 8, 2014, Mr. Allphin requested the following records:

> Any and all paperwork correspondence, emails, pictures, and
> documentation pertaining to ERTS#626393, VCP#CE0371 and
> Facility/Site ID #58926155.

CP at 379.  Mr. Johnson testified by declaration that he called Mr. Allphin for clarification and, based on that discussion, understood the request to be for records "related to Chem-Safe's recent participation in Ecology's voluntary cleanup program (VCP) that began to be discussed with Ecology's Toxics Cleanup Program a month or two prior to the making of this request."  CP at 244.  He then produced responsive documents, of which there were about 50 pages, on February 11, 2014.  When Mr. Allphin e-mailed to inquire if the production was complete, Mr. Johnson responded, "I have included all responsive documents pertaining to the Toxic Cleanup actions after the Kittitas County hearings."  CP at 245.  He closed the request after hearing nothing more from Mr. Allphin.

In discovery served in March 2016, Mr. Allphin made the following request for production of documents:

> Please produce all the records created, used, received, and possessed by
> [Ecology] responsive to Chem-Safe's 10/17/12 request but extending the
> scope of responsive records to include all responsive [Ecology] records
> and documents from 10/18/12 to 1/8/14.

CP at 1351.  Mr. Allphin asserts that some of the records produced in response to this discovery request in April 2016 should have been, but were not, produced in response to

27

his January 8, 2014 public records request. Ecology contends that the 2014 public record

request was much narrower. Certainly the two requests were differently-worded.

The trial court found, "Documents received by Chem-Safe for the first time in

2016 through a separately worded request for discovery, and through separately worded

records requests, do not constitute documents responsive to Chem-Safe's original January

8, 2014 request for records." CP at 2668. We reject this challenge on appeal for a

simpler reason: Mr. Allphin does not identify the records produced in April 2016 that he

contends were responsive to his January 2014 request, nor does he provide argument as

to why he believes they were responsive to the differently-worded request. This violates

RAP 10.3(a)(6), which requires a party to support arguments and provide references to

relevant parts of the record. Having been provided with no identification of specific

records to assist us, we will not sift through the record in an effort to determine which

records Mr. Allphin is complaining about. *See Mills v. Park*, 67 Wn.2d 717, 721, 409

P.2d 646 (1966).

The trial court did not err when it denied Chem-Safe's partial motion for relief.

*Assignment of Error No. 4: The trial court erred when it concluded that
Ecology's search for responsive records was reasonably calculated to lead
to the discovery of all responsive records*

In *Neighborhood Alliance*, our Supreme Court addressed what constitutes an

"adequate search" for records response to a request under the PRA and adopted the

standard federal courts have applied to the adequacy of a search under the federal

28

Freedom of Information Act, Pub. L. No. 89-487, 80 Stat. 250 (1966) (codified as

amended at 5 U.S.C. § 552). Citing a number of federal decisions (citations we omit), the

Court summarized the standard as follows:

> The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents. What will be considered reasonable will depend on the facts of each case. When examining the circumstances of a case, then, the issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found.
> . . . Additionally, agencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered. The search should not be limited to one or more places if there are additional sources for the information requested. Indeed, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested. This is not to say, of course, that an agency must search every possible place a record may conceivably be stored, but only those places where it is reasonably likely to be found.

*Neigh. All.*, 172 Wn.2d at 720 (emphasis, citations and internal quotation marks omitted).

An agency may demonstrate an adequate search by having its employees submit

"'reasonably detailed, nonconclusory affidavits' attesting to the nature and extent of their

search." *Nissen v. Pierce County*, 183 Wn.2d 863, 885, 357 P.3d 45 (2015) (quoting

*Neigh. All.*, 172 Wn.2d at 721). In moving for a determination that it had complied with

its obligation to make an adequate search, Ecology submitted 12 such declarations from

Ecology employees.

Mr. Allphin identifies only one basis for his contention that Ecology's search was

inadequate: he argues that Mr. Johnson did not train Ecology employee Gary Bleeker to

search his "sent" electronic mail in Microsoft Outlook when responding to a public record request and, as a result, Mr. Bleeker failed to do so.

Ecology refutes the "failure to train" charge by pointing to Mr. Johnson's uncontroverted deposition testimony that it was not his job to provide public records training to anyone, and to Mr. Bleeker's testimony that as of the time of Mr. Allphin's record request, he had most recently received public records training on January 18, 2012.

As for what Mr. Bleeker searched, the spotty deposition testimony on which Mr. Allphin relies contains seemingly inconsistent testimony by Mr. Bleeker that his questioner never clarified. Mr. Allphin emphasizes the question, "And it's correct that you do not provide—or you did not provide records out of your sent box to Mr. Johnson?" to which Mr. Bleeker responded, "Yes, true." CP at 2470. But he ignores Mr. Bleeker's testimony not once, but twice, that he had turned over all of his records related to Chem-Safe. *See* CP at 2469. Mr. Bleeker also testified repeatedly during the deposition that he did not normally save "sent" e-mails.

Ecology filed a more consistent declaration from Mr. Bleeker in support of its show cause motion. Mr. Allphin argues we should ignore the declaration as a "self-serving" effort to "back-fill" deposition testimony that causes problems for Ecology. Reply Br. at 21-22. But we find the declaration to be a necessary clarification of a point that was left in confusion when Mr. Bleeker was deposed. In the declaration, Mr.

30

Bleeker testifies that in providing records to Mr. Johnson in response to Mr. Allphin's records request, he used a "search all mail items" feature of Microsoft Outlook that would have performed a global search of his entire mailbox, making it unnecessary to perform a separate search of his "sent" items folder. He also testified that if his search produced few "sent" messages related to Chem-Safe, that was probably because when notified in the past by information systems staff that his e-mails were exceeding his allotted storage capacity, his regular response was to empty the contents of his "sent" items folder.

Ecology demonstrated that its search for documents responsive to Mr. Allphin's record request was adequate.

*Assignment of Error No. 5: The trial court erred when it concluded that Ecology did not violate the PRA when it coordinated with a separate agency to conceal and withhold public records*

Finally, Mr. Allphin argues the trial court erred when it concluded that Ecology did not violate the PRA when it delayed release of 19 records at the County's request.

RCW 42.56.540 authorizes the superior court to enjoin examination of a public record upon the motion of an agency, a person named in the record, or a person to whom the record specifically pertains if it finds that examination "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." It explicitly gives agencies the option of "notifying persons named in the record or to whom a record

31

specifically pertains, that release of a record has been requested." *Id.* Model rules under the PRA authorize an agency that intends to provide such notice to include a reasonable amount of time for notice to the third party in its estimate of how long it will take to respond to a public record request. WAC 44-14-04003(11). This allows the third party time to "file an action to obtain an injunction to prevent an agency from disclosing it . . . [if] the third party . . . prove[s] the record or portion of it is exempt from disclosure." *Id.* (citing RCW 42.17.330; RCW 42.56.540).

This court recently held that "the PRA recognizes that an agency may not be able to respond fully to a request if it needs to notify third parties who are affected by the request." *Doe v. Benton County*, 200 Wn. App. 781, 790, 403 P.3d 861 (2017). As it relates to the 19 records whose release was delayed at the County's request, we view Mr. Allphin's argument on this issue as indistinguishable from the arguments this court rejected in *Doe*. The fact that the County notified Ecology rather than the other way around is a distinction that makes no difference.

Mr. Allphin also identifies two e-mails whose production he claims was delayed until December 23, 2014, as a result of collusion with the County. Here, he is again complaining that some records included on the three compact disks provided to him on December 23, 2014, had been withheld from him earlier. We have already agreed with the trial court's findings and conclusions that records on the compact disks were duplicates of records earlier produced by Ecology.

No. 34760-5-III
*Kittitas County v. Sky Allphin, et al.*

We affirm the trial court. Because Mr. Allphin does not prevail, we deny his

request for an award of attorney fees and costs under RCW 42.56.550(4).

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.